No. 23-2295

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

GROUP HOME ON GIBSON ISLAND, LLC, ET AL.,

Plaintiffs-Appellants

v.

GIBSON ISLAND CORPORATION,

Defendant-Appellee

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

———————————

BRIEF FOR THE UNITED STATES AS AMICUS CURIAE SUPPORTING
PLAINTIFFS-APPELLANTS AND URGING REVERSAL

———————————

DAMON Y. SMITH
  General Counsel

SASHA M. SAMBERG-CHAMPION
  Deputy General Counsel for
  Enforcement and Fair Housing

JOSHUA R. GILLERMAN
OGO O. ORIZU
  Attorneys
  U.S. Department of Housing
  and Urban Development
  Office of the General Counsel

KRISTEN CLARKE
  Assistant Attorney General

BONNIE I. ROBIN-VERGEER
TERESA KWONG
  Attorneys
  U.S. Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 514-4757

## TABLE OF CONTENTS

**PAGE**

INTEREST OF THE UNITED STATES ................................................................... 1

STATEMENT OF THE ISSUES.............................................................................. 1

STATEMENT OF THE CASE................................................................................. 3

    A.    Background ...................................................................................... 3

    B.    District Court Decision.................................................................... 7

SUMMARY OF ARGUMENT ............................................................................... 9

ARGUMENT

    I.    The district court misapplied the legal standards for determining whether plaintiffs satisfied their burden to show that their requested accommodation was necessary and reasonable. ................ 12

        A.    In this Circuit, a plaintiff seeking a reasonable accommodation under the FHA must show that the requested accommodation is necessary and reasonable. ......... 13

        B.    The district court erred in evaluating GIC's conditions on plaintiffs' requested accommodation under the "necessity" prong of the FHA's reasonable-accommodation analysis. ...... 16

        C.    On remand, the district court should consider whether plaintiffs' requested accommodation is reasonable. ................ 24

    II.    The district court erred in concluding that GIC did not refuse plaintiffs' accommodation request. .................................................... 28

CONCLUSION ..................................................................................................... 30

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**CASES:**                                                                                    **PAGE**

*Alexander v. Choate*, 469 U.S. 287 (1985) ............................................................14

*Anderson v. City of Blue Ash*, 798 F.3d 338 (6th Cir. 2015) ............................ 15, 24

*Astralis Condo. Ass'n v. HUD*, 620 F.3d 62 (1st Cir. 2010) ............................1, 29

*Austin v. Town of Farmington*, 826 F.3d 622 (2d Cir. 2016) ..................................13

*Bhogaita v. Altamonte Heights Condo. Ass'n*,
    765 F.3d 1277 (11th Cir. 2014) ....................................................15

*Bragdon v. Abbott*, 524 U.S. 624 (1998) ................................................................13

*Bryant Woods Inn, Inc. v. Howard Cnty.*, 124 F.3d 597 (4th Cir. 1997) ........ *passim*

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978) .................................26

*Corey v. Secretary, U.S. Dep't of Hous. & Urban Dev. ex. rel. Walker*,
    719 F.3d 322 (4th Cir. 2013) ..........................................................24

*Elderhaven, Inc. v. City of Lubbock*, 98 F.3d 175 (5th Cir. 1996) .........................19

*Fair Hous. of the Dakotas, Inc. v. Goldmark Prop. Mgmt., Inc.*,
    778 F. Supp. 2d 1028 (D.N.D. 2011) ............................................27

*Giebeler v. M & B Assocs.*, 343 F.3d 1143 (9th Cir. 2003)........................ 15, 23, 27

*Groome Res., Ltd. v. Parish of Jefferson*, 234 F.3d 192 (5th Cir. 2006)................29

*Harmony Haus Westlake, LLC v. Parkstone Prop. Owners Ass'n*,
    851 F. App'x 461 (5th Cir. 2021)....................................................17

*Hollis v. Chestnut Bend Homeowners Ass'n*,
    760 F.3d 531 (6th Cir. 2014) ......................................... 19, 21, 24

**CASES (continued):** **PAGE**

*Hovsons, Inc. v. Township of Brick*, 89 F.3d 1096 (3d Cir. 1996) ................... 19-20

*Hubbard v. Samson Mgmt. Corp.*, 994 F. Supp. 187 (S.D.N.Y. 1998) ..................27

*Jankowski Lee & Assocs. v. Cisneros*, 91 F.3d 891 (7th Cir. 1996).......................26

*Klossner v. IADU Table Mound MHP, LLC*, 65 F.4th 349 (8th Cir.),
    *cert. denied*, 144 S. Ct. 328 (2023)..................................................................1

*Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of the Twp. of Scotch
    Plains*, 284 F.3d 442 (3d Cir. 2002) .............................................................20

*Oconomowoc Residential Programs, Inc. v. City of Milwaukee*,
    300 F.3d 775 (7th Cir. 2002) ................................................... *passim*

*Schaw v. Habitat for Humanity of Citrus Cnty., Inc.*,
    938 F.3d 1259 (11th Cir. 2019) ....................................... 21, 23-25

*Schwarz v. City of Treasure Island*, 544 F.3d 1201 (11th Cir. 2008).....................22

*Scoggins v. Lee's Crossing Homeowners Ass'n*,
    718 F.3d 262 (4th Cir. 2013) ................................................... *passim*

*Smith & Lee Assocs. v. City of Taylor*, 102 F.3d 781 (6th Cir. 1996) ....................15

*Southeastern Cmty. Coll. v. Davis*, 442 U.S. 397 (1979) ........................................14

*Summers v. City of Fitchburg*, 940 F.3d 133 (1st Cir. 2019) ............................ 23-24

*United States v. California Mobile Home Park Mgmt. Co.*,
    29 F.3d 1413 (9th Cir. 1994) ........................................................................28

*US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002)....................................... 21-22, 24

*Utah Labor Comm'n v. Paradise Town*,
    660 F. Supp. 2d 1256 (D. Utah 2009) ..........................................................26

**CASES (continued):**                                               **PAGE**

*Valencia v. City of Springfield*, 883 F.3d 959 (7th Cir. 2018)...................... 1, 22, 24

*Vorchheimer v. Philadelphian Owners Ass'n*,
    903 F.3d 100 (3d Cir. 2018) ................................................................ *passim*

*Women's Elevated Sober Living L.L.C. v. City of Plano*,
    86 F.4th 1108 (5th Cir. 2023) ............................................................................1

**STATUTES:**

Americans with Disabilities Act
    42 U.S.C. 12112(b)(5)(A)....................................................................... 21-22

Fair Housing Act
    42 U.S.C. 3604(f)(1)(B) ...............................................................................13
    42 U.S.C. 3604(f)(2) .....................................................................................13
    42 U.S.C. 3604(f)(3) .....................................................................................10
    42 U.S.C. 3604(f)(3)(B) ............................................................... 1, 7, 9, 13
    42 U.S.C. 3610.................................................................................................1
    42 U.S.C. 3612.................................................................................................1
    42 U.S.C. 3613(a)..........................................................................................26
    42 U.S.C. 3614.................................................................................................1

**RULE:**

Fed. R. App. P. 29(a)(2)..............................................................................1

**MISCELLANEOUS:**

Joint Statement of the Department of Housing and Urban Development
    and the Department of Justice, *Reasonable Accommodations Under*
    *The Fair Housing Act* (May 14, 2004),
    https://www.hud.gov/sites/documents/huddojstatement.pdf.................. 27-28

## INTEREST OF THE UNITED STATES

The United States has a substantial interest in the resolution of this appeal, which concerns the proper application of the reasonable-accommodation provision in the Fair Housing Act (FHA), 42 U.S.C. 3604(f)(3)(B). The Department of Justice and the Department of Housing and Urban Development (HUD) share enforcement authority under the FHA. *See* 42 U.S.C. 3610, 3612, 3614. HUD has commenced administrative proceedings against housing providers who fail to reasonably accommodate the needs of residents with disabilities. *See, e.g.*, *Astralis Condo. Ass'n v. HUD*, 620 F.3d 62 (1st Cir. 2010). And the United States has filed amicus briefs in appeals involving the FHA's reasonable-accommodation provision. *See, e.g.*, *Women's Elevated Sober Living L.L.C. v. City of Plano*, 86 F.4th 1108 (5th Cir. 2023); *Klossner v. IADU Table Mound MHP, LLC*, 65 F.4th 349 (8th Cir.), *cert. denied*, 144 S. Ct. 328 (2023); *Valencia v. City of Springfield*, 883 F.3d 959 (7th Cir. 2018).

The United States files this brief under Federal Rule of Appellate Procedure 29(a)(2).

## STATEMENT OF THE ISSUES

The FHA, 42 U.S.C. 3604(f)(3)(B), provides that prohibited "discrimination" includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to

afford [a person with a disability] equal opportunity to use and enjoy a dwelling." Plaintiffs Group Home on Gibson Island and Assisted Living Well Compassionate Care 2 seek to operate a home for senior citizens with disabilities. They submitted a request for a reasonable accommodation to defendant Gibson Island Corporation (GIC), a corporation that functions as a homeowners association, to waive a restrictive covenant that prohibits single-family homes from being used for a business purpose. GIC made approval of the accommodation request contingent on plaintiffs' acceptance of certain conditions, and the parties failed to reach agreement. Plaintiffs allege, among other claims, that GIC's refusal to provide a reasonable accommodation violated the FHA.

The United States addresses the following questions:

1. Whether the district court erred in holding that plaintiffs cannot prevail on their reasonable-accommodation claim because plaintiffs failed to show that removal of GIC's conditions for granting their requested accommodation was "necessary" to provide prospective residents with disabilities an equal opportunity to use and enjoy the group home.

2. Whether the district court erred in concluding that GIC did not refuse plaintiffs' request for a reasonable accommodation when it made approval of the request contingent on plaintiffs' acceptance of conditions imposed by GIC that were not agreeable to plaintiffs.

## STATEMENT OF THE CASE

### A.    Background

Plaintiffs Group Home on Gibson Island (Group Home) and Assisted Living

Well Compassionate Care 2 are companies established by Craig Lussi.  Doc. 110,

at 3.[1]  Lussi bought a house ("Banbury Property") on Gibson Island, Maryland with

the intent to convert the single-family home into a home for nine senior citizens

with disabilities who need assistance with daily activities.  *Id.* at 5.  Defendant

Gibson Island Corporation (GIC) is the homeowners association that administers

the private community on the island.  *Id.* at 3.  Island homes are subject to two

restrictive covenants relevant here:  (1) the Business Purpose Covenant requires

homes to be used for private residential purposes only, unless GIC gives prior

approval for use for business purposes, and (2) the Exterior Alterations Covenant

prohibits exterior improvements to island homes without prior GIC approval.  *Id.*

at 3-4.

After obtaining a county building permit, plaintiffs started construction to

convert the Banbury Property from a five-bedroom house into a nine-bedroom

---

[1]  "Doc. __, at __" refers to the docket entry and ECF page number of documents filed in *Group Home on Gibson Island, LLC v. Gibson Island Corp.*, No. 20-cv-891 (D. Md.), the case now on appeal.  "*GIC* Doc. __, at __" refers to the docket entry and ECF page number of documents filed in *Gibson Island Corp. v. Group Home on Gibson Island, LLC*, No. 20-cv-842 (D. Md.).

assisted living facility, without seeking GIC's approval for the construction work or to operate a business at the house. Doc. 110, at 5. When the construction continued even after GIC notified plaintiffs that they were violating the two covenants, GIC filed a declaratory judgment action against Group Home and Lussi in district court seeking an order directing plaintiffs to halt the construction and provide information regarding the home for GIC's consideration. *Id.* at 6; *see also GIC* Doc. 30, at 7. Plaintiffs, in turn, filed this action seeking, among other things, to stop GIC from enforcing the covenants under the FHA. Doc. 110, at 6. The district court consolidated the two actions and subsequently granted summary judgment to GIC in its case. *GIC* Doc. 30, at 7-8, 9-18. As relevant here, the court held that Group Home's discrimination claims under the FHA were not ripe until it requested—and gave GIC an opportunity to grant—an exception to the "business purpose" restriction as a reasonable accommodation. *Id.* at 18.

Afterward, on June 10, 2020, plaintiffs requested that GIC grant a "reasonable accommodation in the form of a waiver or modification of the 'business purpose' restriction . . . to the extent necessary to permit them to operate an assisted living group home for nine seniors with disabilities at the Banbury Property." Doc. 71-34, at 4. The request described plaintiffs' experience in operating group homes for individuals with disabilities and explained that waiver here was reasonable and necessary since no similar group home existed on the

- 4 -

island to meet the needs of seniors with disabilities; thus, without a waiver of the restriction, seniors with disabilities "would have no equal opportunity to use and enjoy 'housing of their choice' on Gibson Island." *Id.* at 4-5. The request further addressed why plaintiffs' operation of a group home at the Banbury Property would not impose "undue financial and administrative burdens" or a "fundamental alteration" on GIC. *Id.* at 5-6.

The parties negotiated over the accommodation request, culminating in GIC providing plaintiffs a proposed Memorandum of Understanding (MOU) in March 2021 that represented GIC's final offer. The proposed MOU imposed 22 conditions on granting plaintiffs' request. Doc. 71-68, at 4-9. Some conditions required plaintiffs to comply with state and county laws, while others required, for example, that "any future claims with respect to Plaintiffs' reasonable accommodation be 'subject to mandatory and binding arbitration,' including a requirement that each side deposit $100,000 in escrow to cover any future award of attorneys' fees and damages." Doc. 110, at 9; *see also* Doc. 71-68, at 7-9. According to GIC, the conditions were "necessary to protect its legitimate interests," and their omission would "impose undue and unacceptable administrative and financial burdens" on GIC. Doc. 71-68, at 3. GIC told plaintiffs that it would approve their accommodation request "upon [plaintiffs']

- 5 -

acceptance of the terms of the attached MOU" and that the MOU "represents the terms [that GIC] will accept, without change or modification." *Id.* at 2.

Plaintiffs, however, did not accept the MOU as is. Instead, plaintiffs proposed changes (Doc. 71-69), to which GIC responded that it would approve plaintiffs' requested accommodation provided that they sign the MOU "***without alteration***." Doc. 71-70, at 5; *see also id.* at 6-11 (restating MOU). After plaintiffs refused to sign (Doc. 71-72), GIC passed a resolution to end further discussions as futile. Doc. 110, at 9; Doc. 71-73.[2] The resolution stated that plaintiffs had rejected GIC's conditions, without which the requested accommodation would have imposed "undue administrative and financial burdens" on GIC. Doc. 71-73, at 3. As a result, plaintiffs amended their complaint to add allegations relating to

---

[2] Only four conditions in the MOU were in dispute by the time GIC ended negotiations: (1) the Guarantor Provision, which identified which entities and persons were subject to the MOU; (2) the Dispute Resolution Provision, in which GIC declined to include plaintiffs' requested 60-day notice-and-cure period; (3) the Septic Provision, which required annual certification and daily monitoring of the septic system for the Banbury Property; and (4) the Arbitration Escrow Provision, which required that all future disputes be subject to mandatory arbitration and that the parties each deposit $100,000 in an escrow account at the commencement of arbitration. *See* Doc. 110, at 8-9, 18; *see also* Doc. 47, at 1; Doc. 71-69, at 9-15; Doc. 71-70, at 3-11.

GIC's refusal to grant a reasonable accommodation in violation of the FHA, 42

U.S.C. 3604(f)(3)(B).  *See* Doc. 47, at 34.[3]

### B.    District Court Decision

The district court granted summary judgment to GIC.  With respect to

plaintiffs' reasonable-accommodation claim, the court stated that plaintiffs had the

burden to show that the requested accommodation was "(1) reasonable and

(2) necessary (3) to afford handicapped persons equal opportunity to use and enjoy

housing."  Doc. 110, at 17 (citations omitted).

The district court did not consider whether plaintiffs' requested

accommodation was reasonable but moved to the "necessity" element.  Doc. 110,

at 17-18.  The court explained that an accommodation is "necessary" under the

FHA "if there is a 'direct linkage between the proposed accommodation and the

equal opportunity to be provided to the handicapped person.'"  *Id.* at 17 (quoting

*Bryant Woods Inn, Inc. v. Howard Cnty.*, 124 F.3d 597, 604 (4th Cir. 1997)

(*Bryant Woods*)).  As the court noted, this Court has stated that the "necessity"

element "has attributes of a causation requirement," and so, "if the proposed

accommodation provides no direct amelioration of a disability's effect, it cannot be

said to be 'necessary.'"  *Ibid.* (quoting *Bryant Woods*, 124 F.3d at 604;

---

[3]  The United States filed a Statement of Interest, addressing, *inter alia*, the
legal standards for evaluating GIC's conditions.  Doc. 94, at 5-15.

*Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 105-111 (3d Cir. 2018)).

But the district court never examined whether plaintiffs' "*proposed accommodation*"—an exception to the business-purpose restriction—was necessary to permit a home for seniors with disabilities to operate. Instead, the court focused on the four disputed requirements in the MOU (the Guarantor, Dispute Resolution, Septic, and Arbitration Escrow Provisions), which GIC demanded as conditions for granting the accommodation. Doc. 110, at 17-18. The court held that "to prevail on their reasonable accommodation claim," plaintiffs were required to show "that *the removal of the four conditions* that they challenge in this case is necessary to provide their disabled residents with an equal opportunity to housing." *Id.* at 17 (emphasis added). The court concluded that plaintiffs could not make such a showing because they presented no evidence that removing these conditions was "necessary for them to provide housing to disabled residents." *Id.* at 18.

Although the district court expressly recognized that the disputed conditions did not actually "address Plaintiffs' reasonable accommodation request" but instead addressed other concerns of GIC (Doc. 110, at 18-22), it still held that plaintiffs had to show that removal of the disputed *conditions* was necessary to "ameliorate the effect" of the disability on the achievement of equal housing

opportunity. *Id.* at 21 (brackets and emphasis omitted) (quoting *Vorchheimer*, 903 F.3d at 110). Because plaintiffs failed to do so, the court concluded that they "simply cannot satisfy the 'necessary' element of their reasonable accommodation claim." *Id.* at 23 (citing *Bryant Woods*, 124 F.3d at 604-605).

The district court further held that GIC's insistence on including these conditions in the MOU did not constitute a "refusal" of plaintiffs' accommodation request by GIC. Doc. 110, at 18. According to the court, there also was "no evidence" to show a "constructive denial" of plaintiffs' accommodation request "because Plaintiffs do not claim that the four disputed conditions" prevented them from "operating the Banbury Property, or present an insurmountable burden." *Id.* at 23 n.5.

## SUMMARY OF ARGUMENT

This Court should reverse the district court's grant of summary judgment to GIC on plaintiffs' reasonable-accommodation claim. The district court committed several reversible errors.

First, the district court misapplied the legal standards for evaluating reasonable-accommodation claims under the FHA, 42 U.S.C. 3604(f)(3)(B). To prevail on their reasonable-accommodation claim, plaintiffs must prove that their requested accommodation was "reasonable" and "necessary" to provide prospective residents with disabilities an "equal opportunity to use and enjoy

housing" of their choice.  *See Bryant Woods Inn, Inc. v. Howard Cnty.*, 124 F.3d

597, 603 (4th Cir. 1997) (citing 42 U.S.C. 3604(f)(3)).

Here, the district court failed to consider in the first instance whether

plaintiffs' requested accommodation—an exception to the business-purpose

restriction—was a necessary and reasonable accommodation.  Instead, the court

required plaintiffs to demonstrate that *removing GIC's conditions* on the requested

accommodation was "necessary" for the prospective residents to have an equal

opportunity to use and enjoy the housing.  This analysis was fundamentally flawed.

It effectively would allow a housing provider to impose any condition unrelated to

alleviating the effects of an individual's disability in exchange for approval of the

accommodation, because removal of such conditions often will not be "necessary"

to enable that individual to occupy their housing of choice.

The district court should have considered GIC's conditions—if at all—in the

course of assessing the reasonableness—not the necessity—of plaintiffs' requested

accommodation.  A requested accommodation is not "reasonable" if it would

impose undue financial and administrative burdens on the defendant, while an

accommodation is not "necessary" if it is not essential to providing an individual

with a disability with an equal opportunity to use and enjoy a dwelling.  Where, as

here, a homeowners association seeks to impose conditions on, or offers an

alternative to, a requested accommodation, not as a way to address the effects of

residents' disabilities but to alleviate alleged undue financial and administrative burdens that granting the accommodation would impose on the association, a court should consider the association's conditions as part of its reasonableness analysis.

Under the appropriate legal framework, the district court, on remand, should determine first whether plaintiffs' requested accommodation is necessary and at least reasonable on its face. If yes, then the court should place on GIC the burden of producing evidence demonstrating that the requested accommodation is unreasonable—because, for example, the request would impose an undue burden without additional conditions—while leaving the overall burden of persuasion on plaintiffs to show necessity and reasonableness. If the court finds that the accommodation would impose undue financial and administrative burdens on GIC, the court should determine if GIC's conditions themselves are reasonable and would afford equal housing opportunity.

Lastly, the district court erred in concluding that GIC had not "refused" to provide plaintiffs' requested accommodation, based on its reasoning that plaintiffs failed to show that GIC's proposed conditions prevented them from operating the group home or presented an "insurmountable burden." Quite simply, GIC's refusal to grant the requested accommodation once plaintiffs rejected its take-it-or-leave-it conditions was a denial of the accommodation request.

Accordingly, the Court should reverse and remand for further proceedings on plaintiffs-appellants' reasonable-accommodation claim.

## ARGUMENT

**I.  The district court misapplied the legal standards for determining whether plaintiffs satisfied their burden to show that their requested accommodation was necessary and reasonable.**

The district court should have considered whether plaintiffs' requested accommodation—an exception to GIC's business-purpose restriction—was reasonable.  Whether the request would have imposed an undue financial or administrative burden on GIC was relevant to that inquiry.  By contrast, the court's analysis—requiring plaintiffs to show that the removal of the four disputed conditions was "necessary" to provide prospective residents with disabilities an equal opportunity to enjoy housing of their choice—effectively allowed GIC to impose any condition unrelated to the residents' disabilities as the cost of obtaining an accommodation.  Additionally, the district court compounded its error by concluding that GIC had not even refused or constructively denied plaintiffs' requested accommodation.  This Court therefore should reverse the grant of summary judgment for GIC as to plaintiffs' reasonable-accommodation claim.

**A.    In this Circuit, a plaintiff seeking a reasonable accommodation under the FHA must show that the requested accommodation is necessary and reasonable.**

The FHA makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . . a person residing in or intending to reside in that dwelling."  42 U.S.C. 3604(f)(1)(B).  The statute similarly prohibits discrimination in the "terms, conditions, or privileges of sale or rental of a dwelling" or "in the provision of services or facilities in connection with such dwelling" because of a person's disability.  42 U.S.C. 3604(f)(2).  "[D]iscrimination" includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such [a] person equal opportunity to use and enjoy a dwelling."  42 U.S.C. 3604(f)(3)(B).[4]

The basic elements of a claim for failure to provide a reasonable accommodation are well-settled in this Circuit.  Plaintiffs bear the burden of establishing that the requested accommodation is "(1) reasonable and (2) necessary (3) to afford handicapped persons equal opportunity to use and enjoy housing."

---

[4]  Although the FHA uses the term "handicap," this brief uses the preferred term "disability."  The two terms have the same legal meaning and may be used interchangeably.  *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998); *Austin v. Town of Farmington*, 826 F.3d 622, 624 n.2 (2d Cir. 2016).

- 13 -

*Bryant Woods Inn, Inc. v. Howard Cnty.*, 124 F.3d 597, 603 (4th Cir. 1997)

(*Bryant Woods*) (citing 42 U.S.C. 3604(f)(3)).

First, the requested accommodation must be "reasonable," which requires a

highly fact-specific inquiry that involves balancing the needs of the parties. *See*

*Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 272 (4th Cir. 2013);

*see also Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d

775, 784 (7th Cir. 2002) (*Oconomowoc*) (the reasonableness inquiry considers

whether the requested accommodation is "both efficacious and proportional to the

costs to implement it"). In determining reasonableness, courts may consider "the

extent to which the accommodation would undermine the legitimate purposes and

effects of existing" rules and "the benefits that the accommodation would provide"

individuals with disabilities. *Bryant Woods*, 124 F.3d at 604. Courts may also

consider "whether alternatives exist to accomplish the benefits more efficiently."

*Ibid.* This Court has explained that under the FHA, an accommodation is not

reasonable if it imposes "undue financial and administrative burdens" or "changes,

adjustments, or modifications to existing programs that would be substantial, or

that would constitute fundamental alterations in the nature of the program." *Ibid.*

(quoting *Southeastern Cmty. Coll. v. Davis*, 442 U.S. 397, 412 (1979); *Alexander*

*v. Choate*, 469 U.S. 287, 301 n.20 (1985)).

- 14 -

Second, the accommodation must be "necessary," which means that without the accommodation, the individual with a disability will likely be denied an equal opportunity to enjoy their housing of choice. *See Anderson v. City of Blue Ash*, 798 F.3d 338, 361 (6th Cir. 2015); *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1155 (9th Cir. 2003). As this Court has put it, to meet this requirement, plaintiffs must show a "direct linkage" between the requested accommodation and the equal opportunity to enjoy housing. *Bryant Woods*, 124 F.3d at 604. If the requested accommodation "provides no direct amelioration of a disability's effect, it cannot be 'necessary.'" *Ibid.* (citation omitted); *see also Bhogaita v. Altamonte Heights Condo. Ass'n*, 765 F.3d 1277, 1288 (11th Cir. 2014) ("[A] 'necessary' accommodation is one that alleviates the effects of a disability." (citation omitted)). Plaintiffs may prove that an accommodation is necessary based on financial viability as well as therapeutic benefits. *See Giebeler*, 343 F.3d at 1155 (burdensome financial policies can interfere with the right of an individual with disability to the "use and enjoyment of their dwelling, thus necessitating accommodation"); *Smith & Lee Assocs. v. City of Taylor*, 102 F.3d 781, 795-796 (6th Cir. 1996) (the "economic viability" of operating a group home is relevant in determining whether an accommodation is necessary).

**B.    The district court erred in evaluating GIC's conditions on plaintiffs' requested accommodation under the "necessity" prong of the FHA's reasonable-accommodation analysis.**

The district court fundamentally erred by evaluating GIC's conditions under the "necessity" prong of the reasonable-accommodation analysis instead of under the "reasonableness" prong.  Doc. 110, at 15-16.

1.  The district court never actually considered, as this Court requires, whether plaintiffs' *actual* "proposed accommodation"—an exception to the business-purpose restriction—was "necessary" to provide prospective residents with disabilities an equal opportunity to use and enjoy their housing of choice.  *See Bryant Woods*, 124 F.3d at 603-604.  Some individuals with disabilities cannot live in residential settings without access to disability-related services and supports.  Consequently, group homes typically satisfy the necessity element by providing those supports and services that enable persons with disabilities to live in residential communities alongside, and on similar terms as, persons without disabilities.  *See, e.g.*, *Oconomowoc*, 300 F.3d at 787.  If the district court had conducted the required analysis, it might well have concluded that the requested accommodation is necessary for the group home's prospective residents to enjoy their housing.  Without GIC's approval of such an exception, plaintiffs would not be able to operate the home.

- 16 -

The district court's focus instead on whether removal of GIC's disputed *conditions* was necessary to allow residents with disabilities to enjoy their housing of choice turned the legal standard on its head. Effectively, the court found that an accommodation (an exception to the business-purpose restriction) that has a "direct linkage" to ensuring equal opportunity of housing for individuals with disabilities, *see Bryant Woods*, 124 F.3d at 604, was not "necessary" because GIC insisted on imposing conditions that, as the court found, did not even purport to address the effects of those individuals' disabilities. Doc. 110, at 17-23.

In so reasoning, the district court misunderstood case law involving alternative accommodations proposed by housing providers as another means of addressing the effects of a disability. *See* Doc. 110, at 23 (stating that "necessity must be considered in light of 'proposed alternatives'" and that "[m]erely being preferable to an alternative is not sufficient; it must be essential" (quoting *Harmony Haus Westlake, LLC v. Parkstone Prop. Owners Ass'n*, 851 F. App'x 461, 465 (5th Cir. 2021))). The court cited *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100 (3d Cir. 2018), as an example of where a plaintiff's requested accommodation was not "necessary" in light of alternative accommodations offered by the defendant. Doc. 110, at 21, 23. *Vorchheimer* involved a plaintiff who needed ready access to her walker when she returned from outings and requested, as an accommodation, that the defendant condominium association

- 17 -

allow her to leave her walker in the building's lobby. 903 F.3d at 112. In response, the defendant offered several alternative accommodations, such as having a staff member bring her walker to her car or having the doorman bring and load her walker in her car. *Ibid.* The Third Circuit held that the plaintiff failed to plead that her requested accommodation was "necessary" given the alternatives offered by the defendant, because those alternatives satisfied plaintiff's need to have access to her walker and minimize her "periods of unsupported standing." *Ibid.* (citation omitted).

Unlike in *Vorchheimer*, GIC's disputed conditions are not alternatives that offer another equally effective means of addressing the effects of prospective residents' disabilities. As the district court recognized, none of the contested conditions imposed by GIC relates to meeting plaintiffs' need for an exception to the business-purpose restriction. Doc. 110, at 18-22. That disconnect led the court wrongly to conclude that plaintiffs failed to show the necessity of *removing* the conditions; instead, it should have led the court to realize that GIC's conditions were relevant to whether plaintiffs' requested accommodation was *reasonable*. *See Bryant Woods*, 124 F.3d at 604 (in determining whether the reasonableness requirement has been met, courts may "consider whether alternatives exist to accomplish the benefits more efficiently").

- 18 -

2.  Although this Court has held that plaintiffs bear the burden of proving that the requested accommodation is both reasonable and necessary, *Bryant Woods*, 124 F.3d at 603-604, the Court has not squarely addressed the legal framework for assessing undue burden as part of the FHA's reasonableness prong. In *Bryant Woods* itself, the plaintiff group home had failed to appeal a zoning board's decision on its request to expand its facility and thus was bound by the board's findings relating to reasonableness.  *Id.* at 604-605; *see also Scoggins*, 718 F.3d at 273-275 (noting that "defendants produced overwhelming evidence" that an ATV's use within a housing community presented a significant safety threat and that plaintiffs failed to "refute[]" such evidence to establish that their proposed accommodation was "reasonable").

The courts of appeals are split on who bears the burden of persuasion under the FHA as to whether a requested accommodation is reasonable.[5]  But there is broad agreement, and rightly so, that once a plaintiff makes a prima facie showing

---

[5]  *Compare, e.g.*, *Oconomowoc*, 300 F.3d at 783-784, 787 (following a sufficient initial showing of reasonableness by plaintiff, defendant has the burden "to prove either that the accommodation was unreasonable or that it created an undue hardship"), *and Hovsons, Inc. v. Township of Brick*, 89 F.3d 1096, 1103 (3d Cir. 1996) (defendant has the burden to show that plaintiff's requested accommodation was unreasonable), *with Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 541 (6th Cir. 2014) (plaintiff has the burden to prove an accommodation is reasonable), *Bryant Woods*, 124 F.3d at 603 (same), *and Elderhaven, Inc. v. City of Lubbock*, 98 F.3d 175, 178 (5th Cir. 1996) (same).

that a requested accommodation is reasonable, the burden of production, at the very least, shifts to the defendant to show that the request is unreasonable because, for example, it imposes an undue burden or would result in a fundamental alteration in its operations.

The Third Circuit, for example, has held that the defendant has the burden to prove that an accommodation proposed by plaintiff is unreasonable because it would impose "undue financial and administrative burdens, or otherwise result[] in the imposition of an undue hardship," or would require "a fundamental alteration in the nature of the program." *See Hovsons*, 89 F.3d at 1104-1105 (citation omitted); *see also Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of the Twp. of Scotch Plains*, 284 F.3d 442, 456-459 (3d Cir. 2002) (defendant municipality "is in the best position to provide evidence concerning what is reasonable or unreasonable within the context of its zoning scheme"). The Seventh Circuit also has held that the "burden is on the plaintiffs to show that the accommodation it seeks is reasonable on its face," and "[o]nce the plaintiffs have made this prima facie showing, the defendant must come forward to demonstrate unreasonableness or undue hardship in the particular circumstances." *See Oconomowoc*, 300 F.3d at 783. Likewise, the Eleventh Circuit has held that once the plaintiff has shown that the requested accommodation is facially reasonable, the defendant has the burden to "prove that the accommodation would nonetheless impose an 'undue burden' or

- 20 -

result in a 'fundamental alteration' of its program." *See Schaw v. Habitat for Humanity of Citrus Cnty., Inc.*, 938 F.3d 1259, 1265-1266 (11th Cir. 2019) (citation omitted).

Similarly, the Sixth Circuit, while expressly refusing to place the "ultimate burden of persuasion" on the defendant "to show undue hardship once the plaintiff makes a *prima facie* showing of necessity and reasonableness," nonetheless effectively places the burden of production on the defendant at summary judgment to demonstrate that it is entitled to judgment as a matter of law. *See Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 542-543 (6th Cir. 2014).

The Seventh and Eleventh Circuit decisions in *Oconomowoc* and *Schaw* are particularly instructive for determining the allocation of burdens here, notwithstanding that, in this Circuit, plaintiffs have the overall burden to show that their proposed accommodation is reasonable. Both cases relied on the Supreme Court's decision in *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401-402 (2002), to require the defendant to provide evidence in support of its assertion of undue burden. *See Schaw*, 938 F.3d at 1265, 1269; *Oconomowoc*, 300 F.3d at 783. In *Barnett*, which involved a reasonable-accommodation claim in the employment context under Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. 12112(b)(5)(A), the Supreme Court made clear that when it comes to reasonable accommodation of a disability, the plaintiff has the burden of showing that a

requested accommodation "seems reasonable on its face, *i.e.*, ordinarily or in the run of cases." 535 U.S. at 395-396, 401. Once the plaintiff has made this showing, the burden shifts to the defendant to show "special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." *Id.* at 402.

Despite differences between the ADA and the FHA—*e.g.*, Title I of the ADA explicitly places the burden on the defendant to demonstrate an undue hardship defense, *see* 42 U.S.C. 12112(b)(5)(A), while the FHA is silent on this point—*Barnett*'s legal framework is helpful in providing by analogy workable guidance as to how courts should assign the burdens of production and persuasion under the FHA. Indeed, while the FHA does not provide for an undue burden defense, courts generally consider, as part of their reasonableness analysis, whether a requested accommodation imposes financial and administrative burdens or costs on the defendant or fundamentally alters the defendant's program. *See Bryant Woods*, 124 F.3d at 604 (courts may consider the accommodation's "functional and administrative aspects, but also . . . its costs" in determining whether it is reasonable); *see also Valencia v. City of Springfield*, 883 F.3d 959, 970 (7th Cir. 2018) (plaintiffs' requested accommodation was reasonable where "the financial and administrative burden on the [defendant] [was] negligible"); *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1223-1225 (11th Cir. 2008) (requested

accommodation to allow four halfway houses to operate was reasonable after taking into account defendant's views regarding "what [was] essential to its zoning districts"); *Giebeler*, 343 F.3d at 1158 (request by a prospective tenant with a disability to waive defendants' no co-signer policy was reasonable even though defendants had "identified some administrative burdens and expenses that could result" from having to seek rent payment from a co-signer where defendant had previously waived this policy).

Because the financial and administrative burdens that a requested accommodation would impose on the defendant are relevant to determining whether the accommodation is reasonable, it makes sense to require plaintiffs in FHA cases first to make a prima facie showing of reasonableness but then to shift the burden of production to the defendant to come forward with evidence to show the request is unreasonable—because, for example, it would impose an undue burden. *See, e.g.*, *Schaw*, 938 F.3d at 1266, 1269; *Oconomowoc*, 300 F.3d at 783-784. In practice, once a plaintiff has met its burden to show that the requested accommodation is reasonable on its face and the defendant comes forward with evidence to demonstrate unreasonableness or an alleged undue financial and administrative burden in the particular circumstances, the district court can balance the benefits of the accommodation against the burden on the defendant. *See Scoggins*, 718 F.3d at 272; *see also Summers v. City of Fitchburg*, 940 F.3d 133,

- 23 -

139 (1st Cir. 2010); *Schaw*, 938 F.3d at 1265-1267; *City of Springfield*, 883 F.3d at 968-970; *Anderson*, 798 F.3d at 362-363; *Hollis*, 760 F.3d at 542.

**C.      On remand, the district court should consider whether plaintiffs' requested accommodation is reasonable.**

On remand, the district court should first consider, as explained above, whether plaintiffs' requested accommodation (waiver of the business-purpose restriction) was facially reasonable.  If yes, then GIC should be required to produce evidence to support its claim that the requested accommodation was unreasonable insofar as it would have imposed an undue financial and administrative burden "in the particular circumstances," *Barnett*, 435 U.S. at 402, and thus that GIC required each condition to alleviate that burden and render the accommodation reasonable. *Bryant Woods*, 124 F.3d at 604; *see* Doc. 71-68, at 3 (stating that an accommodation agreement without GIC's conditions "would impose undue and unacceptable administrative and financial burdens" on GIC); Doc. 71-70, at 3 (same); Doc. 71-73, at 3 (same).[6]

---

[6]  Importantly, GIC must support any purported undue financial and administrative burden with objective evidence—not stereotypes or mere speculative harm.  *See, e.g.*, *Corey v. Secretary, U.S. Dep't of Hous. & Urban Dev. ex. rel. Walker*, 719 F.3d 322, 328 (4th Cir. 2013) (housing provider "cannot justify the other discriminatory conditions he sought to impose, based as they were on unsubstantiated stereotypes about autistic people in general").

The situation here is similar to that in *Schaw*, where the defendant had placed a "condition" on the plaintiff's requested accommodation. 938 F.3d at 1263-1264. The Eleventh Circuit vacated summary judgment for the defendant, explaining that the district court erred by not determining first whether plaintiff's own request was reasonable "before turning to consider a defendant's objections and counterproposals," and remanded for the district court to consider whether the requested accommodation constituted an undue burden or fundamental alteration. *Id.* at 1269, 1274-1275.

The district court's failure to conduct this analysis here is highly problematic. Under the logic of the court's decision, any housing provider would be free to impose nearly any condition, cost, or other burden as the price of granting a reasonable accommodation, because removing such a condition often will not be "necessary" or "essential" to allowing an individual with disabilities to occupy housing. This case provides a good illustration of why the court's approach was wrong. Although a group home can voluntarily agree to the conditions contested here, several of the conditions seemingly would impose a major burden on plaintiffs without necessarily outright preventing them from operating the home. *See, e.g.*, Doc. 71-68, at 5-6 ¶¶ 7, 9 (Septic Provisions requiring plaintiffs to submit to GIC an annual septic certification prepared by an

- 25 -

environmental engineering firm and install a meter that creates daily monitoring reports measuring the effluent level flowing to the septic tank).

Accordingly, if the district court concludes that plaintiffs' requested accommodation would impose undue administrative and financial burdens on GIC, the court should determine if GIC's conditions, or alternatives, themselves are reasonable and would afford equal housing opportunity. *Vorchheimer*, 903 F.3d at 109; *see, e.g.*, *Jankowski Lee & Assocs. v. Cisneros*, 91 F.3d 891, 896-897 (7th Cir. 1996) (affirming HUD's finding that housing provider's alternative accommodation was not reasonable); *Utah Labor Comm'n v. Paradise Town*, 660 F. Supp. 2d 1256, 1259, 1263 (D. Utah 2009) (denying summary judgment due to disputed facts regarding the reasonableness of defendant's proposed alternatives).

For instance, certain of GIC's conditions would require plaintiffs to forgo rights and protections available under the FHA. Specifically, the mandatory arbitration requirement in the MOU would force plaintiffs to abandon their rights to a judicial forum under the FHA as a condition for receiving a reasonable accommodation. *See* 42 U.S.C. 3613(a); Doc. 71-68, at 8. Similarly, the arbitration provision would give GIC the right to seek attorneys' fees against plaintiffs, which the FHA does not allow except for frivolous claims. Doc. 71-68, at 3; *see Bryant Woods*, 124 F.3d at 606 (citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978)).

- 26 -

Furthermore, the arbitration's escrow provision, which requires each side to initially deposit $100,000 in an escrow account before arbitration, in effect imposes a fee as the price for obtaining the accommodation. *See* Doc. 71-68, at 8-9. Because the FHA generally requires a reasonable accommodation from financial policies that interfere with a person's equal opportunity to use and enjoy their housing of choice, *see Giebeler*, 343 F.3d at 1155, it follows that the FHA bars housing providers from charging fees for reasonable accommodations, even though such fees might not directly interfere with the accommodation's therapeutic benefits. *See, e.g.*, *Fair Hous. of the Dakotas, Inc. v. Goldmark Prop. Mgmt., Inc.*, 778 F. Supp. 2d 1028, 1039-1040 (D.N.D. 2011) (housing provider cannot charge a pet fee for an emotional support animal where that "animal is necessary to ensure an equal opportunity to use and enjoy the dwelling and the additional fees have a disparate impact"); *Hubbard v. Samson Mgmt. Corp.*, 994 F. Supp. 187, 193 (S.D.N.Y. 1998) (landlord's proposal to designate a parking space near plaintiff's apartment for a monthly fee did not constitute a reasonable accommodation).

Indeed, a Joint Statement of HUD and the Department of Justice makes clear that defendants cannot impose additional fees as a condition for granting a reasonable accommodation under the FHA. *See* Joint Statement of the Department of Housing and Urban Development and the Department of Justice, *Reasonable Accommodations Under The Fair Housing Act* (May 14, 2004),

- 27 -

https://www.hud.gov/sites/documents/huddojstatement.pdf.  As the Ninth Circuit

explained, "fees that merit closer scrutiny" include "those with unequal impact" on

individuals with disabilities, "imposed in return for permission to engage in

conduct" that housing providers are required to permit under the FHA.  *United

States v. California Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1417 (9th Cir.

1994).

## II.    The district court erred in concluding that GIC did not refuse plaintiffs' accommodation request.

The district court also was wrong in ruling that GIC did not refuse or

constructively deny plaintiffs' requested accommodation.  A refusal of a request

for a reasonable accommodation "need not be explicit, but rather may be treated as

a 'constructive' denial based on the decision maker's conduct."  *Scoggins v. Lee's

Crossing Homeowners Ass'n*, 718 F.3d 262, 271-272 (4th Cir. 2013) (citation

omitted).

Remarkably, the district court held that GIC's inclusion of take-it-or-leave-it

conditions in the MOU that were not acceptable to plaintiffs did not constitute a

"refusal" of the requested accommodation.  Doc. 110, at 18.  And the court

likewise found "no evidence" to show a "constructive denial" of the request

because plaintiffs did not claim that GIC's conditions "prevent them from

operating the Banbury Property" or "present an insurmountable burden."  *Id.* at 23

n.5 (citation omitted).

- 28 -

Again, the district court erred by improperly focusing on whether the conditions would have prevented plaintiffs from operating the group home. Doc. 110, at 23 n.5. This Court has stated that courts should examine the defendant's conduct to determine if there was an explicit or constructive denial of an accommodation request. *See Scoggins*, 718 F.3d at 271-272. Just "as an indeterminate delay has the same effect as an outright denial," *Groome Resources, Ltd. v. Parish of Jefferson*, 234 F.3d 192, 199 (5th Cir. 2006), GIC's demand that plaintiffs accept the conditions in the MOU in order to obtain their requested accommodation, followed by termination of further negotiations after plaintiffs refused to sign the MOU, had the same effect as an outright denial of plaintiffs' accommodation request. It matters not that GIC did not initially refuse plaintiffs' request but was willing to approve the request so long as plaintiffs agreed to GIC's conditions. *See Astralis Condo. Ass'n v. HUD*, 620 F.3d 62, 69 (1st Cir. 2010) (rejecting condominium association's argument that it was not liable for a denial of a reasonable accommodation because "it never expressly refused to accommodate the complainants").

In short, GIC's position was that it was willing to approve plaintiffs' accommodation "only after" plaintiffs agreed to the MOU "without alteration." Doc. 71-70, at 3. GIC was unwilling to approve the accommodation otherwise. *See ibid.*; Doc. 71-73 (resolution abandoning further negotiations). Plaintiffs

- 29 -

refused to sign the MOU, and GIC refused to approve plaintiffs' accommodation request.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's grant of summary judgment to GIC and remand for further proceedings.

Respectfully submitted,

DAMON Y. SMITH
  General Counsel

SASHA M. SAMBERG-CHAMPION
  Deputy General Counsel for
  Enforcement and Fair Housing

JOSHUA R. GILLERMAN
OGO O. ORIZU
  Attorneys
  U.S. Department of Housing
  and Urban Development
  Office of the General Counsel

KRISTEN CLARKE
  Assistant Attorney General

s/ Teresa Kwong
BONNIE I. ROBIN-VERGEER
TERESA KWONG
  Attorneys
  U.S. Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C. 20044-4403
  (202) 514-4757

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B)(i) because it contains 6500 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it was prepared in Times New Roman 14-point font using Microsoft Word for Microsoft 365.

s/ Teresa Kwong_____
TERESA KWONG
 Attorney

Date:  March 26, 2024