# In the United States Court of Appeals for the Fourth Circuit

| | | |
|---|---|---|
| Group Home on Gibson Island, LLC et al. | ) ) ) | |
| *Appellants* | ) ) | No. 23-2295 |
| v. | ) | |
| Gibson Island Corporation, | ) ) | |
| *Appellee.* | ) ) | |

## Appellants' Reply to Objection to Bill of Costs

We will endeavor to keep this reply short, in proportion to the $2,206.40 bill of costs that prompted the Corporation's objection.

Few cases address the distinction between reversal and vacatur under Rule 39(a). Surveying the handful of this Court's decisions and orders that cite Rule 39(a) and are available on Westlaw, none appear to be on-point.

Persuasive authority holds that "what matters for purposes of Rule 39(a) is the *substance* of the disposition, not merely the form." *City of San Antonio, Tex. v. Hotels.com, L.P.*, 959 F.3d 159, 165 (5th Cir. 2020) (citing *Saunders v. Wash. Metro. Area Transit Auth.*, 505 F.2d 331, 333 (D.C. Cir. 1974)). "Indeed, 'there is a difference of opinion among judges as to the circumstances in which 'vacated' or 'reversed' should be used in decretal language.'" *Id.* (quoting Jon O. Newman, *Decretal Language:*

*Last Words of an Appellate Opinion*, 70 BROOK. L. REV. 727, 728 (2005)). Most authority, including the *City of San Antonio* decision, involves clear-cut situations in which an appellant won entry of judgment in its favor, notwithstanding "vacated" decretal language.

As Judge Newman has noted, however, there is a difference of opinion and dearth of authority how to describe a disposition that does not direct entry of judgment for the appellant:

> In the many circumstances where an appellate court rejects a final judgment of a district court but does not order the complete opposite of what the district court has done (i.e., does not direct judgment for the appellant), the practices of appellate judges vary as to whether the decretal language should include the word "vacated" or "reversed." Some judges believe that "reversed" should never be used unless the appellate court directs the complete opposite of what the district court has ordered. For these judges, whenever the appellate ruling is in favor of the appellant but orders anything less than the complete opposite of what the district court has ruled (for example, the district court has entered summary judgment for the plaintiff and the court of appeals rules that a factual issue exists that requires a trial), the decretal language will include the word "vacated." An appropriate form would be "The judgment of the district court is vacated, and the case (or the appeal or the cause) is remanded for trial (or for further proceedings)." Even these judges, however, will frequently say that they are "reversing" the ruling that grants summary judgment for the plaintiff, but are "vacating" the judgment that was entered based on that ruling.

> *Other judges believe that "reversed" is appropriate whenever the appellate court, on an appeal from a final judgment, rules in favor of the appellant, even though the appellant does not win the complete opposite of the district court's ruling. For these judges, an appropriate form in the example just given would be "The judgment of the district court is reversed, and the case (or the appeal or the cause) is remanded for trial (or for further proceedings)."*
>
> There is very little case law on the issue of "reversed" versus "vacated." In *Mickens v. Taylor*, [535 U.S. 162 (2002)], Justice Scalia's opinion for the Supreme Court emphasized that a prior ruling of the Court in *Wood v. Georgia*, [450 U.S. 261 (1981)] had only "vacated" the judgment of the lower court and had remanded for further proceedings (an inquiry concerning an allegedly conflicted counsel), rather than "reversed" and overturned a conviction. The implication of Justice Scalia's language is that "reversed" would have been appropriate if the prior ruling had overturned the conviction, but it should be noted that such a ruling would only have required a new trial, not a final judgment in favor of the defendant.
>
> The Supreme Court has frequently used "reversed" in the decretal language of an opinion, even though the opinion did not direct entry of judgment for the appellant.
>
> *I have not found a decision that attached any significance to the use of "reversed," rather than "vacated," where the appellant prevailed on the issues raised on appeal but did not win a district court judgment in its favor.*

Newman, *Decretal Language*, at 729–30 (emphasis added). More recent secondary authority confirms the lack of clarity across both federal and state appeals. *See* Hon. Andrea M. Leahy, *Dispositions and Mandates*, in

APPELLATE PRACTICE FOR THE MARYLAND LAWYER: STATE AND FEDERAL 545-48 (5th ed. 2023).

Thus, if there is to be any potentially valid objection to our bill of costs, it would not be that the Court used the word "vacated" rather than "reversed," or that the Court found an issue of fact for trial. Rather, the potential objection would be that Appellants asked the Court to direct the entry of partial summary judgment in their favor, but the Court declined, and so there should be an *apportioned share* of costs.

For a few reasons, we submit that the entire bill of costs should be apportioned to the Corporation, with no share apportioned to Appellants.

*First*, it is generally a victory for a civil rights plaintiff to get past summary judgment and to trial in the first place, particularly against opposition so well-heeled. This was not a situation in which the Court found defects in the summary judgment order but remanded for the district court to address alternative grounds in the first instance or gave the parties another opportunity to move for summary judgment. This case is going to trial, and in the process the Court rejected the legal relevancy arguments that would have formed the basis for many motions *in limine* or trial objections by the Corporation.

Second, Appellants' unsuccessful request for partial summary judgment in their favor did not add to the cost of their appeal of the entry of complete summary judgment against them. The same filing fee, the same Joint Appendix printing costs, and the same brief printing costs would have been necessary even had Appellants requested only the same relief the Court ordered.

Finally, we note that Appellants already are bearing a significant part of the printing costs. The Court allows $0.15 per page, inclusive of binding costs. The best deal Appellants could secure was $0.15 per black and white page, exclusive of binding. The Court allows no increase for color copies, which have become the norm in appeals, and color copies cost five times as much ($0.65) per page. Nor does the Court allow for the costs of delivering the paper copies. Thus, as the invoice attached to our bill of costs shows, we are requesting printer fees of $1,606.40, even though our out-of-pocket cost was $2,119.79. We are therefore effectively bearing an apportioned amount of costs, even if the Court grants the bill of costs in full.

Respectfully submitted:

/s/ *Steven M. Klepper*
Steven M. Klepper

Kramon & Graham, P.A.
750 East Pratt Street, Suite 1100
Baltimore, Maryland 21202
(410) 752-6030
sklepper@kg-law.com

*Counsel for Appellants*

**Certificate of Service**

I hereby certify that, on August 12, 2025, I filed a copy of this motion with the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ *Steven M. Klepper*
Steven M. Klepper